HUNTRESS, The (ROBSON v.). See Case No. 11,971.

---

## Case No. 6,915.

### The HUNTSVILLE.

[8 Blatchf. 228.][1]

Circuit Court, S. D. New York. Feb. 11, 1871.

COLLISION—SPEED—CONFUSION OF LIGHTS—STEAMER AND SAILING VESSEL.

1. A steamer saw, over her port bow, the green light of a sailing vessel. She kept on, not slackening her speed, until she saw, for an instant, a red light on the sailing vessel, and then, in immediate apprehension of collision, she ported her helm, without slackening her speed. The mate in charge, in obvious alarm, left his post to call the captain, and, on his return, the green light of the vessel was again in view, and an order to starboard was given. A collision ensued: *Held*, that the steamer was in fault, in not slackening her speed and stopping and reversing.

[Cited in The Jay Gould, 19 Fed. 769.]

2. The sailing vessel was also held in fault, in presenting a confusion of lights to the steamer, from want of proper screens, or from the lights not being in proper position, or from other cause.

[Appeal from the district court of the United States for the Southern district of New York.]

In admiralty.

William Marvin and Cornelius Van Santvoord, for libellants.

Charles Donohue, for claimants.

WOODRUFF, Circuit Judge. (1) It is impossible to exonerate the steamer from responsibility for the collision with the ship for which this cause is prosecuted. It was the duty of the steamer to keep out of the way of the sailing vessel; and, unless there was some fault on the part of those navigat-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

ing that vessel, which operated to mislead the steamer or defeat her effort to keep out of the way, the steamer is necessarily liable. The presumption of fault on her part, there being no pretence of inevitable accident, is conclusive. In any view of the subject, the steamer was bound to use vigilance, skill and good seamanship; and, although she was at liberty to choose her own mode of avoiding the ship, always at her own peril if she erred, it is pertinent to inquire whether, in what she did, she exercised proper prudence and care.

According to the testimony of both the mate and the lookout on the steamer, they saw the green light of the ship on the steamer's port-bow some minutes before any change was made in the course of the steamer. The mate correctly inferred that it was on an approaching vessel. Whether he so inferred or not, the indication was decisive, that, if the light was properly set, the vessel so seen was crossing the track of the steamer ahead of her then position, or was coming head on towards the steamer's port-bow. It was, therefore, at that moment, uncertain whether any change in the course of the steamer was necessary or proper. It was certain, that, if the vessel was heading towards the port-bow, or nearly towards the port-bow, of the steamer, there could be no collision, if each vessel kept its course, because the steamer, at her then speed, must pass out of reach of the ship before the latter could reach the course of the steamer; and on the other hand, it was perfectly certain, that, if the green light of the ship, and the green light only, continued to be in view over the port side of the steamer, the proper, and only proper, mode of avoiding her was to starboard the helm and pass under the stern of the ship. If, in the then apparent course of the ship, with her green light alone in view, the steamer made any change, her plain duty was to starboard, and not to port the helm or attempt to cross the bow of the ship. That this is so is fully confirmed by the testimony of the mate himself, and by the act of the captain when he came from his room. The mate's testimony is, that he continued his course until he saw a red light, and then ported. If his testimony is true in this; he acted in recognition of the view above suggested, namely, that, the green light alone being in sight, it might not be necessary to make any change, but, if any change was made, it should be to starboard the helm and go astern of the ship. The act of the captain is still more decisive. Called from his room, he says, he first saw the green light. Acting on the impulse of the moment, but under the guidance of years of experience and presumptive knowledge of what the circumstances required, he instantly orders the helm a-starboard, hard down. This was a most impressive declaration of what the mate should have done in season to avoid

collision. How far the mate was excused by seeing the red light, and whether any red light was seen on the ship, will be presently considered. But, assuming that the mate gives an accurate account of the occurrence, he was not without fault. Some attention to the transaction as he describes it, (and as he is corroborated by the lookout, wheelsman and master,) in connection with the time at which what he did was done, will make this apparent. He had seen and was watching the ship's green light, and had not judged any change of course necessary, until the green light, as he says, disappeared and the red light came into view. On the instant, he sprang past the wheelhouse, gave the order to port the helm, went to the captain's room and called him, and returned to his post. All this occupied but a few seconds; and yet, on his return to his post, the green light was in view, and the captain, who was there at almost the same moment, first saw that green light, and it was then too late to make any change to avoid the collision. It is impossible to avoid the conclusion, that, in each of the possible alternative views of the mate's conduct, he was to blame. He had either held his course, with his speed, of nine or ten miles an hour, unabated, until the green light was very near, or, if there remained a reasonable interval, within which he could have starboarded his helm on the return of the green light to his view, he spent that interval in running for the captain, to disclose to him his obvious alarm and apprehension of collision. He acted hastily, on the first glimpse of a red light, the very appearance of which created alarm, and which, though it indicated that porting was the proper movement, continued so short a time in view, that, if he had remained at his post, he must have seen that stopping and reversing were imperatively required.

The sixteenth of the rules of navigation, enacted by congress, is imperative, that a steamship, when approaching another ship, so as to involve risk of collision, shall slacken her speed, and, if necessary, stop and reverse. This does not mean, that she may wait until the danger is imminent, before she slackens her speed, nor does it mean that she need not slacken her speed, if the risk of collision is caused by some fault in the approaching vessel. Life and property on the seas are cared for, and are intended to be protected, by the law; and, when risk of collision appears, it is the absolute duty of the steamer to slacken her speed, and not to trust exclusively to speculation or hope of avoiding it by other means. Here was danger of collision? Upon all the proofs, I think, there was risk of collision, within the rule, before the mate, according to his own story, saw any red light. It is certain there was risk of collision when he did see the red light, if his account is true. His acts speak a language of unmistakable

meaning. He springs to the wheelhouse, gives his order, and hastens to the captain, to obtain his aid and judgment, thus not only abandoning the chance of avoiding collision, by acting wisely on what might appear visible during the interval, however short, but showing that he was then at least fully awake to the danger. He should have slackened speed, and, as I think, also have stopped and reversed, before he called the captain. At all events, he cannot be excused for continuing at full speed until it was clear both to him and to the captain that collision was inevitable.

Nor can the failure to adopt this precaution be excused by the suggestion, that, porting being apparently best, the chances of escape from danger were greater by proceeding at full speed. That is not shown. The distance of the vessels, when the order to port was given, was such, that slackening speed, and then, if necessary, stopping and reversing, would not only have been in fact effectual, but there was every reason, in the judgment of those on board the steamer as to such distance, to believe that it would be so.

I do not find sufficient evidence that the steamer did not keep a sufficient lookout, so as to discover the ship as soon as the light became visible. I think the proof is to the contrary. But, in the management of the vessel after the ship was seen, in the failure to watch with sufficient closeness, without the interruption of the short interval devoted to the call of the captain, and in the continuance of the speed of the steamer, notwithstanding the risk of collision, the steamer was greatly in fault.

(2.) But, on the other branch of the case, I am not able to acquit the ship of fault. The mate of the steamer is distinct and positive in his statement, that he saw the red light on the ship, and that then, and not till then, he gave the order to port, but for which order the collision, in all probability, would not have happened. The captain confirms this, by the equally explicit testimony, that he saw first the green, and, almost immediately afterwards, the red. The inference from the testimony of both is, that the view of the lights on the ship was not only not constant, nor merely changing, so as to indicate change of relative course or position, but that it was fluctuating, at one moment, green, at another, red, at another, green, and, at still another, both lights, creating, necessarily, confusion and uncertainty. Now, however true it may be, as above suggested, that the action of the mate of the steamer was hasty, and that, had he remained on the post of observation, he would have seen, by the reappearance of the green light, that porting increased the danger, the appearance of the red light was calculated to induce just what he did.

On the trial in the district court, the absence of testimony from the lookout on the steamer was a circumstance of suspicion, and it was inferred as probable, even, that the steamer had no proper lookout, while, in the absence of the testimony of the lookout, the evidence on behalf of the libellants, or, perhaps, the supposed improbability that the ship's red light could be seen, was deemed to overcome the positive testimony of captain and mate that they saw such red light. On the trial in this court, the testimony of the lookout is produced. He has no possible interest in the controversy. He has retired from the sea, and is living in Kansas. He swears that he has not been informed what the claimants seek to prove by him, and has received no instructions, advice or communication to influence his testimony. Under these circumstances, his positive testimony to his being on the lookout, his seeing and reporting the ship as soon as she was visible in the low foggy atmosphere, (confessedly overhanging the Gulf Stream,) and his first seeing the green light of the ship and, very soon after, the red light, are very strongly corroborative of the testimony of the master and mate on the subject. I cannot conclude that these three witnesses have perjured themselves or are all mistaken. Whether the view which they had of the red light is due to the cause insisted upon by the claimants, that the course of the ship was more to the eastward than her witnesses testify, or to the not improbable fact, that the screens did not effectually shield it, or to the other suggestion, insisted upon by counsel in argument, that the red light had been taken down for some purpose and so became visible, I cannot escape the conclusion which these three witnesses establish, that these two lights, a red and a green, were both presented to their eyes; and it is a fact of much significance, when the court is called upon to disbelieve the testimony of three witnesses, that no witness is produced from the ship, who is able to state, of his own knowledge, that the light was in position. In this confusion of lights, presented to the eye of the steamer, she was misled, and, though I think that the appearance of the lights called most strongly upon her officers to slacken speed, they are not solely responsible. The decree herein must direct contribution by each vessel to the loss sustained.